UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, as subrogee of FROCK BROS. TRUCKING, INC. | Case No. 08 CV 2799 |
| Plaintiff, | Judge Dow |
| vs. | Magistrate Valdez |
| CUMMINS, INC. | |
| Defendants. | |

CUMMINS INC.'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO TRANSFER VENUE

I.   INTRODUCTION

Plaintiff American Empire Surplus Lines Insurance Company ("American Empire" or "Plaintiff") alleges that on April 7, 2004, the Cummins engine installed in a truck owned by its insured, Frock Bros. Trucking, Inc. ("Frock"), catastrophically failed resulting in a fire that destroyed the truck and the trailer it carried. It is irrefutable that the engine's alleged failure and the resulting fire occurred in Antelope County, Nebraska. Nebraska, unsurprisingly, is also the location of all non party witnesses to the fire as well as all evidence arising out of and related to the fire.

Defendant Cummins Inc. ("Cummins") is an Indiana corporation with its principal place of business in Columbus, Indiana. Curiously, American Empire neither admits nor concedes the fact that neither it nor its insured is a resident of Illinois. In fact, American Empire is a Delaware corporation with its principal place of business in Cincinnati, Ohio.

Frock is a Pennsylvania company with its principal place of business located in New Oxford, Pennsylvania.

Put simply, neither the parties nor the accident have any connection whatsoever with Illinois.

In response to Cummins' motion to transfer venue to the District of Nebraska (the "Motion"), American Empire cites a myriad of cases for various principles of law. None of these cases, however, speak to the facts of this one: non-resident parties disputing liability arising out of an occurrence wholly unrelated to the forum.

The facts and the governing law of this case make plain that transfer to the District of Nebraska serves the convenience of the parties, the witnesses and the interests of justice.

## II.     ARGUMENT

### A.     Applicable Legal Standard

It is well-settled that the Court's decision regarding transfer must be informed by the private interests of the parties as well as the public interest of the court. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007). The factors relevant to private interest analysis include: 1) the plaintiff's choice of forum; 2) the situs of material events; 3) the convenience of the parties; and 4) the convenience of the witnesses. *Id.* The court's familiarity with the applicable law and the efficient administration of justice guide the analysis of the public interest of the court. *Id.* The following analysis amply demonstrates that the Court should transfer this action to the District of Nebraska.

**B.     This Action Could Have Been Brought in the District of Nebraska**

As a preliminary matter, the Court must determine whether this action "might have been brought" in the District of Nebraska. 28 U.S.C. 1404(a). Venue in this diversity action is governed by 28 U.S.C. 1391(a)(2), which provides that venue is available in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiff's alleged damages were incontrovertibly sustained in Nebraska. Venue, therefore, is appropriate in Nebraska.

In its response to Cummins' motion, Plaintiff cites to *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) for the unlikely proposition that Nebraska may not have "jurisdiction" over Cummins. Plaintiff complains that "there is a significant issue as to whether the District of Nebraska has jurisdiction given that Cummins' only contact is the catastrophic failure of the engine and fire, which only occurred by mere chance." *See* Plaintiff's Opposition, p.7.

To the extent that there is any question regarding Nebraska's "jurisdiction" over Cummins, Cummins hereby waives any objections.

**C.     The Private Interests of the Parties Recommend Transfer.**

    **1.     There is no Nexus between Plaintiff's Allegations and Plaintiff's Choice of Forum.**

Plaintiff fails to controvert the fact that neither it, nor its insured Frock is a resident of Illinois. Nor does Plaintiff address the issue that none of the acts or omissions at issue in this litigation occurred in Illinois. "A plaintiff's choice of forum is afforded less deference…when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Moore*, 487 F. Supp. 2d at 1007 (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1995)). This factor weighs in favor of transfer.

### 2. The Situs Of Material Events is Nebraska.

The April 7, 2004 fire that damaged Plaintiff's insured's truck is the sole material event giving rise to Plaintiff's claims. The fire occurred in Nebraska. The cause and origin inspection took place in Nebraska. The fire personnel who responded to the fire reside in Nebraska. This factor overwhelmingly weighs in favor of transfer. *See American Family Ins. v. Wal-Mart Stores*, No. 02 C 8017, 2003 WL 1895390, at *2 (N.D. Ill April 17, 2003) (granting motion to transfer venue where situs of material events, the fire and subsequent fire investigation, occurred in transferee division).

### 3. Witnesses and Sources of Proof are located in Nebraska, not Illinois.

It is true that Cummins did not specify the Nebraska non-party witnesses it will call in the trial of this matter. To be sure, Cummins will call the Antelope County fire department personnel who responded to the fire to determine what they saw and the results of their investigation. Cummins will also seek to depose the officer whose report accompanies this motion to learn more about his investigation of the fire and his interview of witnesses to the same. Although Cummins did not designate specific witnesses, the fact remains that none of them reside in Illinois; each of them resides in Nebraska.

Plaintiff argues that the parties may file a motion to extend the reach of the court. This, however, is a not factor in the Court's analysis. Plaintiff also cites improperly to *Argent Funds Group, LLC v. Schutt*, No. 3:05CV01456, 2006 WL 2349464, at *5 (D. Conn. June 27, 2006) for the proposition that non-party witnesses may appear at trial via videotaped deposition. Again, this is not a factor in the Court's analysis. Finally, Plaintiff claims that the "only true witness" is the truck driver employed by Frock. *See* Plaintiff's Opposition, p. 4. The location of a party witness is hardly relevant, given that

-4-

party witnesses must appear. *Moore*, 487 F. Supp. 2d at 1003. This factor weighs in favor of transfer.

### 4. The District of Nebraska Better Serves the Convenience of the Parties.

Neither Plaintiff nor Cummins are residents of the Northern District of Illinois. Cummins seeks to litigate this matter in the forum most closely related to Plaintiff's claims. Plaintiff requires access to the same witnesses, evidence and documents. This motion does not shift any additional burden to Plaintiff. *See Childress v. Ford Motor Co.*, No. 03 C 3656, 2003 WL 23518380, at *1 (N.D. Ill. Dec. 17, 2003). This factor weighs in favor of transfer.

## D. Public Interest of the Court Favors Transfer.

### 1. Cases filed in Nebraska Go to Trial Before Cases Filed in Illinois.

In analyzing judicial administration, the Court must consider the speed with which the case will proceed to trial. *Timebase Pty Ltd. v. The Thomson Corp.*, No. 07 C 460, 2007 WL 772946, at *3 (N.D. Ill. Mar. 9, 2007).

Despite Plaintiff's attempts to massage the numbers in terms more favorable to its position, the numbers are clear. Cases move to trial more quickly in Nebraska than they do in Illinois. For the twelve month period ending September 30, 2007, the median time interval from filing a civil action to trial in the District of Nebraska was 22 months; for the Northern District of Illinois, it was 29.7 months. *See* Federal Court Management Statistics (2007), attached hereto as Exhibit A and incorporated herein by this reference. This factor weighs in favor of transfer.

### 2. Nebraska Law Governs this Action.

Under Illinois' conflicts of law rules governing this diversity action, Nebraska law will clearly apply.

The parties agree that Illinois applies the Second Restatement's "most significant relationship" test. Plaintiff, however, surprisingly references the section of the Restatement dealing with claims for unjust enrichment while claiming that Cummins has "misstated the appropriate standard of the significant relationship analysis for choice of law." *See* Plaintiff's Opposition, p.8. Plaintiff's claims are not grounded in unjust enrichment. Plaintiff's claims are grounded in tort. Regarding tort actions, the Restatement provides the following general analysis:

> Section 145. The General Principle.
>
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflicts of Law, § 145. Plaintiff sustained the injury at issue in this litigation in Nebraska. The conduct causing the injury, the failure of the engine, occurred in Nebraska. For purposes of this litigation, the parties' relationship is obviously centered in Nebraska.

-6-

Concerning Plaintiff's product defect claims, the Restatement is even more clear:

> Section 147.  Injuries to Tangible Things.
>
> In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred dictates the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied.

Restatement (Second) Conflicts of Law § 147.  Here, Nebraska is the "state where the injury occurred."  Nebraska law, therefore, "dictates the rights and liabilities of the parties."

Plaintiff's alleged injuries were sustained in Nebraska.  Under Illinois' conflicts of law rules governing this diversity action, Nebraska law will clearly apply.  Federal law appreciates that it is more convenient to have federal judges familiar with Nebraska law to preside over this action.  *In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 955 (7th Cir. 2007).  This factor weighs in favor of transfer.

### 3.      Illinois Has no Connection to or Interest in the Litigation.

Federal courts endeavor to litigate controversies in their locale.  *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997).  The fire at issue occurred in Nebraska; Plaintiff's alleged damages were sustained in Nebraska.  The events at issue took place in Nebraska.  The citizens of Nebraska, not Illinois, have a compelling interest in resolving this matter.  *Childress*, 2003 WL 23518380, at *6.  This factor weighs in favor of transfer.

### III.    CONCLUSION

There are no factors, and Plaintiff cites none, that favor venue in this Court.  Plaintiff's claims are premised on a Nebraska fire.  All non-party witnesses and evidence

related to the fire are located in Nebraska. Significantly, this forum has no nexus either with the Nebraska fire or the parties. Neither Plaintiff nor its insured are residents of Illinois; Plaintiff is a Delaware company doing business in Ohio, while Frock is a Pennsylvania-incorporated business operating out of Oxford, Pennsylvania. Cummins is an Indiana company.

Based on the foregoing, and on Cummins' initial suggestion in support of motion to transfer venue, the Court should transfer this action to Nebraska.

>Respectfully submitted,
>
>CUMMINS INC.
>
>/s/ Brendan J. Healey_____
>Brendan J. Healey
>MANDELL MENKES LLC
>bhealey@mandellmenkes.com
>333 West Wacker, Suite 300
>Chicago, Illinois 60606
>Telephone: (312) 759-2158
>Telecopier: (312) 251-1010
>
>J. A. Felton
>Dan E. Cranshaw
>LATHROP & GAGE L.C.
>2345 Grand Boulevard
>Suite 2800
>Kansas City, Missouri 64108-2684
>Telephone: (816) 292-2000
>Telecopier: (816) 292-2001
>
>ATTORNEYS FOR DEFENDANT

CC 2004895v5

## **CERTIFICATE OF SERVICE**

      I hereby certify that I filed a copy of the foregoing with the Clerk of the Court using the ECM/ECF system. I further certify that a copy of the foregoing was served on June 26, 2008 via ECF on the following counsel of record:


    Robert Ostojic
    ro@lefltd.com
    LEAHY, EISENBERG & FRAENKEL, LTD
    33 West Monroe Street
    Suite 1100
    Chicago, IL  60603-5317
    Telephone:  (312) 368-4554


                                      /s/ Brendan J. Healey_____
                                      An Attorney for Defendant

# EXHIBIT A

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | \multicolumn{6}{c|}{12-MONTH PERIOD ENDING SEPTEMBER 30} | | |
|---|---|---|---|---|---|---|---|---|---|---|
| \multicolumn{3}{|c|}{**ILLINOIS NORTHERN**} | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | \multicolumn{2}{c|}{Numerical Standing} |
| OVERALL CASELOAD STATISTICS | \multicolumn{2}{c|}{Filings*} | 8,422 | 8,093 | 9,056 | 10,584 | 11,126 | 11,135 | U.S. | Circuit |
| | \multicolumn{2}{c|}{Terminations} | 7,929 | 8,255 | 8,805 | 11,461 | 10,888 | 10,709 | | |
| | \multicolumn{2}{c|}{Pending} | 8,091 | 7,711 | 7,914 | 7,706 | 8,699 | 8,587 | | |
| | % Change in Total Filings | Over Last Year | | 4.1 | | | | | 27 | 2 |
| | | Over Earlier Years | | | -7.0 | -20.4 | -24.3 | -24.4 | 81 | 6 |
| \multicolumn{3}{|c|}{Number of Judgeships} | 22 | 22 | 22 | 22 | 22 | 22 | | |
| \multicolumn{3}{|c|}{Vacant Judgeship Months**} | 15.8 | 5.7 | 12.0 | 9.6 | 22.1 | 17.8 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 382 | 367 | 412 | 481 | 505 | 506 | 62 | 4 |
| | | Civil | 346 | 330 | 369 | 437 | 461 | 459 | 36 | 3 |
| | | Criminal Felony | 24 | 26 | 34 | 32 | 38 | 39 | 93 | 7 |
| | | Supervised Release Hearings** | 12 | 11 | 9 | 12 | 6 | 8 | 77 | 6 |
| | \multicolumn{2}{c|}{Pending Cases} | 368 | 351 | 360 | 350 | 395 | 390 | 48 | 3 |
| | \multicolumn{2}{c|}{Weighted Filings**} | 462 | 443 | 485 | 512 | 526 | 525 | 39 | 3 |
| | \multicolumn{2}{c|}{Terminations} | 360 | 375 | 400 | 521 | 495 | 487 | 66 | 5 |
| | \multicolumn{2}{c|}{Trials Completed} | 11 | 11 | 13 | 12 | 12 | 14 | 86 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.7 | 13.9 | 12.9 | 10.3 | 9.9 | 10.3 | 90 | 7 |
| | | Civil** | 6.2 | 6.5 | 6.9 | 5.9 | 5.5 | 5.5 | 7 | 2 |
| | \multicolumn{2}{c|}{From Filing to Trial** (Civil Only)} | 29.7 | 26.4 | 27.0 | 28.4 | 26.0 | 26.0 | 65 | 5 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 456 | 500 | 388 | 337 | 442 | 461 | | |
| | | Percentage | 6.5 | 7.4 | 5.6 | 5.0 | 5.6 | 6.0 | 65 | 6 |
| | \multicolumn{2}{c|}{Average Number of Felony Defendants Filed Per Case} | 1.7 | 1.8 | 1.9 | 1.9 | 1.7 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 45.20 | 45.07 | 51.46 | 39.36 | 45.57 | 43.63 | | |
| | | Percent Not Selected or Challenged | 31.8 | 30.9 | 36.9 | 31.0 | 37.3 | 34.8 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 7620 | 118 | 150 | 701 | 53 | 55 | 1504 | 902 | 563 | 428 | 1614 | 23 | 1509 |
| Criminal* | 527 | 1 | 152 | 59 | 43 | 107 | 80 | 13 | 6 | 17 | 11 | 11 | 27 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | NEBRASKA | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,710 | 1,827 | 1,778 | 1,922 | 1,930 | 1,739 | | |
| | Terminations | | 2,146 | 1,984 | 1,959 | 1,990 | 1,713 | 1,447 | | |
| | Pending | | 1,123 | 1,455 | 1,442 | 1,598 | 1,713 | 1,486 | | |
| | % Change in Total Filings | Over Last Year | | -6.4 | | | | | 69 | 6 |
| | | Over Earlier Years | | | -3.8 | -11.0 | -11.4 | -1.7 | 40 | 6 |
| | Number of Judgeships | | 3 | 3 | 3 | 3 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | .0 | 1.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 570 | 609 | 593 | 640 | 482 | 435 | 13 | 2 |
| | | Civil | 297 | 362 | 340 | 354 | 265 | 261 | 48 | 5 |
| | | Criminal Felony | 190 | 182 | 201 | 243 | 175 | 141 | 6 | 1 |
| | | Supervised Release Hearings** | 83 | 65 | 52 | 43 | 42 | 33 | 7 | 1 |
| | Pending Cases | | 374 | 485 | 481 | 533 | 428 | 372 | 45 | 5 |
| | Weighted Filings** | | 513 | 600 | 612 | 666 | 481 | 463 | 25 | 2 |
| | Terminations | | 715 | 661 | 653 | 663 | 428 | 362 | 4 | 2 |
| | Trials Completed | | 34 | 39 | 37 | 37 | 32 | 21 | 10 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.3 | 10.1 | 9.0 | 7.9 | 7.7 | 7.6 | 42 | 6 |
| | | Civil** | 11.3 | 9.6 | 9.0 | 8.2 | 10.1 | 10.4 | 79 | 8 |
| | From Filing to Trial** (Civil Only) | | 22.0 | 21.0 | 20.0 | 24.0 | 15.0 | 22.0 | 32 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 20 | 32 | 70 | 20 | 10 | 10 | | |
| | | Percentage | 3.1 | 3.4 | 7.9 | 2.2 | 1.0 | 1.0 | 31 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.3 | 1.3 | 1.2 | 1.3 | 1.4 | | |
| | Jurors | Avg. Present for Jury Selection | 33.32 | 29.32 | 33.55 | 36.43 | 33.40 | 35.90 | | |
| | | Percent Not Selected or Challenged | 19.0 | 8.8 | 17.8 | 25.5 | 20.6 | 25.9 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 891 | 41 | 30 | 230 | 30 | 27 | 27 | 184 | 60 | 25 | 128 | - | 109 |
| Criminal* | 570 | 13 | 249 | 54 | 112 | 77 | 14 | 21 | 5 | 6 | 8 | 2 | 9 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not
\*\* See "Explanation of Selected Terms."